# Alexander Cochran and Edward Thursby *against* James Cummins.

*Quære.* Whether under a recovery at Nisi Prius in Philadelphia, four days before the term, and defendant's agreeing that a *testatum* may issue thereon immediately, with a release of errors, such *testatum* tested the first day of the term, and returnable to the next term, is regular and valid against other execution creditors ?

Third persons, who complain of irregularity in process injurious to them, must apply for redress in due time.

On the last day of the last December term, a rule was obtained to shew cause, why a *testatum fieri facias* in this action, tested 14th December 1801, returnable on the third Monday in March 1802, directed to the sheriff of Northumberland county, should not be set aside.

The facts on argument appeared to be these :

The plaintiffs having instituted their suit in the Supreme Court, the same came on to trial at a Court of *Nisi Prius* in Philadelphia, on the 10th December 1801, when the plaintiffs recovered a verdict for $2434 and 68 cents. The defendant's counsel pressed the plaintiffs' counsel for another hearing, when his client might have an opportunity of preparing fully for the trial. This was at length agreed to, and the following agreement was drawn up and subscribed in pursuance thereof :

- " I consent, that a *testatum* shall issue to Northumberland " county, for the purpose of securing to the plaintiffs what they " may eventually recover against the defendant, but no sale to " take place till the merits of the cause shall be finally tried. I " agree to release any errors or irregularity in issuing the *testa-* " *tum*.                    Mahlon Dickerson for the defendant.

" 23d December 1801."

Thereupon a *testatum fi. fa.* issued, which was delivered to the sheriff of Northumberland county, on the 28th of the same month. Robert Irwin obtained judgment against John and James Cummins, in the Common Pleas of the same county, and issued his execution on the 4th January 1802. The cause was again tried under the agreement on the 8th December 1802, when the plaintiffs recovered against the defendant $2723 and 77 cents. The defendant's goods were levied on and sold.

*Messrs. M. Levy and Duncan in support of the rule. [*137

We contend, that however good and binding the agreement may be, as between the original parties, it is not valid, so far as

4 YEATES—9

[Cochran et al *v.* Cummins, et e contra.]

**it** respects the interests of third persons not parties thereto. Many cases may be put of this nature. An act may be good between the parties, though fraudulent and void as to creditors. So of marriage brocage bonds; and unrecorded mortgages as to subsequent mortgagees or purchasers; as in Levinz *v.* Will, 1 Dall. 430. Here has been undue precipitation. The present proceedings cannot be legalized. The first trial was at *Nisi Prius*, on Thursday, 10th December 1801. Judgment could only be entered thereon on the first day of the following term, which happened on Monday the 14th of the same month; a *fi. fa.* might then issue, returnable on the last day of the term, viz. January 2d, 1802, and the *testatum* thus grounded, might have then issued tested of that day, returnable on the third Monday in March following. But in the present instance the *testatum* was taken out ten days too soon.

No case has been determined, that on a trial at a preceding *Nisi Prius* court, or during the term, a judgment may be entered thereon, and an execution tested the first day of the term, may be made returnable on the last day of the same term. The original jurisdiction given to the Supreme Court, within the city and county of Philadelphia, by the law of 25th September 1786, 2 St. Laws, 472, is limited in its effects, and local in its nature. A *fi. fa.* must be filed, and a term intervene before a *testatum* can issue. 1 Dall. 330. But here no *fi. fa.* could legally be filed; there was not a sufficient interval of time. Fictions of law only hold in respect of the ends and purposes for which they were invented. Where they are urged to an intent, not within the reason and policy of the fiction, the other party may shew the truth. 3 Burr. 1243. Equity subsists in legal fiction, but fictions shall not work an injury to innocent persons.

Nothing is better settled, than that consent cannot give jurisdiction. Will it be asserted, that consent could authorize the sale of lands on a *ca. sa.* or on a writ of *retorno habendo?* Could it justify a sale by a ministerial officer without a judgment? Such acts of a defendant's mind, grossly violating all legal principles, would be empty shadows of no avail. The law is adapted to the common interests of society, and cannot be bent by the wayward caprices of interested individuals. Of this a strong instance occurs in a late book of Reports. It was solemnly resolved, that a defendant cannot be taken in execution twice on the same judgment; though he was discharged the first time by the plaintiffs' consent, on an express undertaking that he should be liable to be taken in execution again, if he failed to comply *with the terms agreed upon. 2 East, 243. If it be objected that the court should not interpose their summary powers, because Irwin has a remedy against the sheriff in the ordinary course of proceeding, we answer the remark, by denying that he has any remedy while the *testatum* remains in full force, unless it was merely void in itself. And if it be further objected, that we come too late, we say our

knowledge of the circumstances of the case was but of a re-
cent date, and it does not appear when Irwin knew of the sale
of the goods levied on.

Mr. Ingersoll, in opposition to the rule, observed, that a strong
sense of justice in the plaintiffs had been tortured into an in-
strument of oppression.    He would not enter into a formal dis-
cussion how far the proceedings were regular as to strangers ;
for as to the parties, it had been admitted, they were legally
binding.    Thus much, however, might be said.    To effectuate
the fair agreement of the counsel, every thing would be sup-
posed to be done that could be done.    On the first trial at *Nisi
Prius,* an immediate judgment might be entered, and a *fieri
facias* issued, returnable on the first return day of the next
term, viz. 14th December 1801.    Consent might authorize such
a measure, for Irwin had no vested right when the *testatum* is-
sued ; and thus every step would be strictly regular.    The de-
fendant might have made a good bill of sale to the plaintiffs to
secure them in their demand, so far as the value of those goods
went.    And why might he not secure them in the way he has
done ?    The utmost that has been alledged is, that the *testatum*
was taken out eight or ten days too soon.    An original may be
filed, returnable to the last return day of the term, to ground a
*testatum.*    2 Dall. 269.    But a previous point presented itself to
the consideration of the court.    Has Robert Irwin, even if in-
jured, made his application for redress in due time ?    His exe-
cution against John and James Cummins, issued on the 4th
January 1802, and most probably was soon after put into the
sheriff's hands.    He would there naturally be informed of the
now plaintiffs' prior execution ; but at any rate, the issuing of
his execution would put him on his inquiry, and this was equiva-
lent to notice.    The party who complains of irregularity in
others, ought himself to be strictly correct, and afford no
ground for the charges of negligence or remissness.    Here Ir-
win, instead of making a prompt application to the summary
powers of the court, suffers nearly two years to elapse before
he takes any active step in the business, viz. from the 4th Janu-
ary 1802, to the 31st December 1803.

The court gave no opinion as to the regularity of the *testatum
*fieri facias,* but were fully satisfied that the application
came too late.                                                    [*139

Rule discharged.